IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KWAME T. TINCH<br><br>v.<br><br>JONATHAN LAZARO et al. | CIVIL ACTION<br><br>NO. 20-5563 |

**MEMORANDUM RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Baylson, J.**                                                                                                            **May 26, 2022**

### I.   Introduction

Defendants Jonathan Lazaro, Christopher Houpt, and Ralph Conte, all of whom are police officers, have filed a Motion for Summary Judgment (ECF 33) in this case arising from alleged police misconduct. Plaintiff Kwame T. Tinch has brought claims against Defendants alleging that they used excessive force during an arrest in violation of the Fourth and Fourteenth Amendments and Pennsylvania tort law.

### II.   Background and Procedural History

The undisputed facts of this case, considered in the light most favorable to the nonmoving party, are as follows. On January 12, 2019, Plaintiff Kwame T. Tinch was out walking with his girlfriend, Dy'nae Kattes, in Lower Chichester, Pennsylvania. A police vehicle, containing Officer Alexander Fleming and Defendant Officer Houpt, pulled up to Tinch and Kattes. The officers had been dispatched regarding a domestic violence report. (MSJ, Statement of Material Facts ¶¶ 1–2, 36–38.)

Tinch walked away from the police vehicle. Officer Houpt ordered Tinch to stop at least once. Tinch fled into a wooded area, and Officers Houpt and Fleming pursued. (MSJ Resp., SMF ¶¶ 5–6.) Defendant Officer Lazaro, who was nearby and saw the chase, joined in. (MSJ, SMF ¶¶

1

68–70.) Defendant Officer Conte, who was also nearby, may have done so as well. (Id. ¶¶ 116–20.) However, this is disputed. (MSJ Resp., SMF ¶¶ 117–20.)

As Tinch ran, Officer Houpt used a Taser on him from behind. Tinch fell to the ground, on top of a gun of which he was in possession. (MSJ, SMF ¶¶ 11–12, 43–46.) As Tinch lay on the ground, Officer Lazaro stood or kneeled on his body. (Id. ¶¶ 21–22, 75–80.) Officer Houpt then used the Taser on Tinch's leg to administer a drive stun, and Officer Houpt or Conte punched Tinch in the face repeatedly. (Id. ¶¶ 51–59; MSJ Resp., SMF ¶ 93.)

Tinch was arrested and taken to a police station. He was then transported to a hospital due to his injuries. Tinch was criminally charged with illegal possession of a firearm, resisting arrest, and attempting to disarm law enforcement; he pled guilty to the first two charges on June 17, 2019.[1] (MSJ, SMF ¶¶ 92–94, 121–24.)

Factual disputes abound in this case. The parties broadly agree that Tinch ran away from officers who then injured him in the process of arrest. However, the parties disagree on many details of the incident: what led up to it, which officers did what, and how Tinch acted during the arrest.

Plaintiff filed suit against Defendant Officers and the Lower Chichester Township Police Department. The Lower Chichester Township Police Department was ultimately dismissed from the action (ECF 7), leaving Defendant Officers as the only remaining defendants.

In his Amended Complaint (ECF 21), Plaintiff brings a claim against Defendants, pursuant to 42 U.S.C. § 1983, for violating his rights under the Fourth and Fourteenth Amendments. Plaintiff also brings a tort claim for assault and battery under Pennsylvania law. Defendants seek

---

[1] The Court notes that "a conviction for resisting arrest does not necessarily preclude an arrestee for recovering damages on a § 1983 excessive force claim." Garrison v. Porch, 376 F. App'x 274, 277 (3d Cir. 2010) (citing Nelson v. Jashurek, 109 F.3d 142, 145–46 (3d Cir. 1997)).

summary judgment against Plaintiff on both Counts.  Plaintiff filed a Response (ECF 37), and Defendant filed a Reply (ECF 39).

**III.    Legal Standard**

Summary judgment should be granted if the movant can establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  If a factual dispute "might affect the outcome of the suit under the governing law," the factual dispute is material and will allow the nonmovant to survive summary judgment.  Id.  A grant of summary judgment is appropriate only if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In deciding a motion for summary judgment, courts are obligated to "review the record as a whole and in the light most favorable to the nonmovant, drawing reasonable inferences in its favor." In re Chocolate Confectionary Antitrust Litig., 801 F.3d 383, 396 (3d Cir. 2015).  The moving party must inform the district court of the basis for its motion and identify the portions of the record that demonstrate the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the burden of proof on a particular issue rests with the nonmoving party at trial, the moving party's burden at the summary judgment stage can be met by simply pointing out to the court "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.  Once the moving party has met its initial burden, the nonmoving party must set forth specific facts—through citation to affidavits, depositions, discovery documents, or other evidence—that demonstrate the existence of a genuine triable dispute.  Fed. R. Civ. P. 56(c).

**IV.     Defendants' Motion**

    **a.  Fourth and Fourteenth Amendments**

"The Fourth Amendment safeguards '[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures.'" Lamont v. New Jersey, 637 F.3d 177, 182 (3d Cir. 2011) (quoting U.S. Const. amend. IV).  This safeguard is applied to the states by the Fourteenth Amendment's Due Process Clause.  See Oliva-Ramos v. Att'y Gen., 694 F.3d 259, 276 (3d Cir. 2012) ("[T]he Fourth Amendment was applied to the states through incorporation by the Fourteenth Amendment.").

"To prevail on a Fourth Amendment excessive-force claim, a plaintiff must show that a seizure occurred and that it was unreasonable under the circumstances." Lamont, 637 F.3d at 182–83.  A court must ask "whether under the totality of the circumstances, 'the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).  Although it may be decided at the summary judgment stage if appropriate, "[r]easonableness under the Fourth Amendment should frequently remain a question for the jury." Id. at 777 (quoting Abraham v. Raso, 183 F.3d 279, 290 (3d Cir. 1999)).

    **i.  Constitutional Violation**

Defendants contends that there is no evidence that any Defendant Officers violated Tinch's constitutional rights.  (MSJ Br. 5.)  Plaintiff argues in response that there is a dispute of material fact as to whether Defendant Officers used excessive force when they used a Taser on Tinch when

4

he was running away.  Plaintiff further argues that there is a dispute of material fact as to whether Defendant Officers used excessive force when they used a Taser on Tinch and punched him in the face as he was pinned facedown on the ground.  (MSJ Resp. Br. 3.)

Although Plaintiff notes certain factual disputes regarding the initial use of the Taser, such as where exactly it hit Tinch, it is unclear from the briefs how these factual disputes are material to determining whether this use of the Taser was reasonable.  However, the Court agrees with Plaintiff that there are genuine disputes of material fact as to the actions that took place when Tinch was pinned to the ground.  Tinch testified in his deposition (ECF 33, Ex. B) that he was not resisting arrest and was attempting to comply with the officers' commands to put his hands behind his back.  (Tinch Dep. 55, 63–65.)  Tinch also testified that, in the position he was in, it would have been physically impossible for him to reach for Officer Lazaro's belt, as Defendants assert.  (Id. at 61–62.)  Additionally, Officer Fleming testified in his deposition (ECF 33, Ex. E) that he had already removed Tinch's firearm at the time the drive stun and punching occurred.  (Fleming Dep. 67–68.)  Similarly, Officer Houpt testified in his deposition (ECF 33, Ex. C) that one of Tinch's arms had already been secured prior to Tinch being punched in the face.  (Houpt Dep. 44.)

On the basis of this evidence, a reasonable jury could conclude that Tinch was effectively incapacitated once he was pinned down and did not pose any danger to the officers.  See El v. City of Pittsburgh, 975 F.3d 327, 336 (3d Cir. 2020) (noting that the "immediate threat to the safety of the officers" and "the possibility that the suspect may be armed" are relevant factors in determining whether a use of force was excessive); see also Bennett v. Murphy, 274 F.3d 133, 137 (3d Cir. 2002) ("An officer may still contend that he reasonably, but mistakenly, believed that his use of force was justified by the circumstances as he perceived them; this contention, however, must be considered at trial.").  This may support a jury finding that Defendant Officers used an objectively

5

unreasonable amount of force against Tinch in violation of his rights under the Fourth and Fourteenth Amendments.

### ii. Qualified Immunity

Defendants contend that even if there is evidence that may support a finding that Defendant Officers violated Tinch's constitutional rights, all officers are entitled to qualified immunity. (MSJ Br. 5.) "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Peroza-Benitez v. Smith, 994 F.3d 157, 165 (3d Cir. 2021) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)).

Courts conduct a two-part inquiry to determine whether a right was "clearly established." The first step is to "'define the right allegedly violated at the appropriate level of specificity.' This requires us to frame the right 'in light of the specific context of the case, not as a broad general proposition.'" Id. (citations omitted). In the present case, the specific right at issue may be framed as the right of a subdued and compliant arrestee to not be repeatedly punched and drive stunned with a Taser.

Having defined the right allegedly violated, the Court can proceed to the next step of the qualified immunity analysis: determining whether the right at issue was "clearly established" at the time it was allegedly violated, meaning "whether the right was 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. (citations omitted). To determine this, courts in the Third Circuit look first "to factually analogous Supreme Court precedent, as well as binding opinions" by the Third Circuit Court of Appeals. If these sources provide no clear guidance, a court may consider whether there is a "robust consensus of cases of persuasive authority in the Courts of Appeals," as well as "take into account district court

cases, from within the Third Circuit or elsewhere." Id. at 165–66. There are also "some exceptional cases [in which] the 'violation [is] obvious' such that general statements of law may suffice to show that a right is 'clearly established,' even in the absence of factually analogous precedent." Id. at 166 (quoting Brosseau v. Haugen, 543 U.S. 194, 199 (2004)).

The Court finds that it cannot properly rule on Defendants' qualified immunity defense until the relevant factual disputes are resolved. Should Plaintiff prove his allegations at trial, qualified immunity may be applicable or inapplicable. The Third Circuit "takes a 'broad view of what constitutes an established right of which a reasonable person would have known.'" Id. (quoting Kopec, 361 F.3d at 778); see also Boyden v. Twp. of Upper Darby, 5 F. Supp. 3d 731, 741 (E.D. Pa. 2014) (Dalzell, J.) ("A reasonable law enforcement officer should know that excessive uses of Taser stuns to effectuate an arrest would constitute a Fourth Amendment violation." (quoting Gorman v. Warwick Twp., No. 10-CV-6760, 2011 WL 1235198, at *9 (E.D. Pa. Apr. 1, 2011) (Joyner, J.))); Shultz v. Carlisle Police Dep't, 706 F. Supp. 2d 613, 624 (M.D. Pa. 2010) (concluding after reviewing case law that "[a] reasonable officer under the circumstances would know that the use of physical force that included repeatedly tasering a subject who had already been subdued and did not pose any threat violated the plaintiff's rights.").

Accordingly, in the present case, "[t]he availability of the qualified immunity defense must be determined by a finder of fact after a trial on the merits." Garey v. Borough of Quakertown, No. 12-CV-0799, 2013 WL 3305222, at *6 (E.D. Pa. July 1, 2013) (Baylson, J.) (reviewing excessive force cases denying summary judgment on the basis of qualified immunity where factual disputes remained about the events giving rise to the claim of immunity).

### b. Assault and Battery

Under Pennsylvania law, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) (quoting Cohen v. Lit Bros., 70 A.2d 419, 421 (Pa. Super. Ct. 1950)). In a suit against a police officer, the officer "may be held liable for assault and battery when a jury determines that the force used in making an arrest is unnecessary or excessive." Id.; see also Garey, 2013 WL 3305222, at *7 ("[W]hether an officer is liable for assault and battery under Pennsylvania law turns on whether he or she has used an excessive degree of force, as a matter of Fourth Amendment law, in dealing with an arrestee.").

For the same reasons discussed in the context of Plaintiff's constitutional claim, the Court finds that evidence has been produced that could allow a reasonable jury to find Defendant Officers liable for assault and battery.

### V. Conclusion

For the foregoing reasons, the Court will deny Defendants' Motion. An appropriate Order follows.

O:\CIVIL 20\20-5563 Tinch v Lazaro\20cv5563 Memorandum re MSJ.docx